**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Control ESI, Inc. d/b/a Softwrench Solutions,

Plaintiff,

v.

University of Denver,

Defendant.

No. CV-12-01639-PHX-DGC

**ORDER**

On September 19, 2012, the University of Denver ("DU") filed a motion to transfer this case to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a). Control ESI, Inc. d/b/a SoftWrench Solutions ("SoftWrench") has filed a response (Doc. 29) and DU has filed a reply (Doc. 32). For the reasons that follow, the Court will grant the motion.[1]

**I. Background.**

Evolved Systems, Inc. d/b/a Supply & Service ("Supply & Service") was an Arizona corporation that provided implementation and hosting of facilities management services. Doc. 1 at 2. As part of those services, Supply & Service would sell licenses to use a computer software product called Maximo, a product that was acquired by IBM in 2006. Doc. 1 at 3. In June 2005, DU and Supply & Service entered into an agreement

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

for assessment of DU's software needs, implementation of the new software, on-site training for users, and ongoing technical support services. Doc. 1 at 3; Doc. 29-2. As part of the arrangement, DU purchased licenses to use the Maximo product at its Denver campus from Supply & Service. Doc. 1 at 3.

In 2007, SoftWrench, a Delaware corporation with its principal place of business in Columbus, Ohio, acquired Supply & Service. Doc. 1 at 2, 4, 6. Although it did not assume all of that company's liabilities, it continued to provide services pursuant to the DU contract. *Id.* In March 2011, IBM informed both parties that it had conducted an audit and concluded that some of the licenses had been used in an unauthorized manner. Doc. 1 at 2, 4-5.

SoftWrench claims it was directed to negotiate with IBM on DU's behalf. Doc. 1 at 5. DU disputes that claim. Doc. 22 at 4. SoftWrench settled with IBM and sent DU an invoice in the amount of $701,590 for reimbursement. Doc. 1 at 1. After DU disputed its liability to reimburse SoftWrench under the terms of their agreement, SoftWrench initiated this suit to enforce its interpretation of the contract. *Id.* DU now moves to transfer the case to the District of Colorado and SoftWrench objects.

## II. Legal Standard.

28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.2000). In *Jones*, the Ninth Circuit provided the following list of non-exclusive factors to consider:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiffs choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to

compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Id.* at 498–99. DU has the burden of demonstrating that transfer is appropriate, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–256 (1981), and "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum," *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986).

**III. Analysis.**

After considering all of the relevant factors, the Court will grant DU's motion to transfer. With respect to factors one and two, the agreement at issue in this case provides that it "is executed and intended to be performed in the State of Colorado and the laws of the State of Colorado shall govern its interpretation and effect." Doc. 29-2 at 19. Although this is a choice of law clause and not a choice of forum clause, the District Court in Colorado clearly is more familiar with Colorado law than this Court.

SoftWrench focuses on factors three, four, five, and eight. It argues that many of the employees of the original servicing company are Arizona residents and that the hosting facilities in Arizona will be important sources of proof. It further contends that DU reached out to the Arizona forum when it sought services from Supply & Service, and that ultimately DU has not made "a strong showing of inconvenience to warrant upsetting [Plaintiff's] choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

SoftWrench's arguments are unpersuasive. While "a court should not lightly disturb a plaintiff's choice of forum," *Holder Corp v. The Main Street Distrib., Inc.*. No. CV-86-1285-PHX-RCB, 1987 WL 14339, at *8 (D. Ariz. Jan. 16, 1987), the choice is given less deference when the plaintiff is not a resident of the forum. *Reaves v. Cable One, Inc.*, No. CV-11-00469-PHX-JAT, 2011 WL 5331695, at *2 (D. Ariz. Nov. 7, 2011) (citing *Pupo-Leyvas v. Bezy*, No. CV-07-1032-PHX-SMM, 2008 WL 2026276 at *5 (D. Ariz. May 9, 2008)). Supply & Service was an Arizona corporation, but it has since been purchased by SoftWrench, which is incorporated in Delaware and has its

principal place of business in Ohio. Furthermore, while relevant witnesses may reside in Arizona, the substance of the dispute does not arise from the hosting services provided in Arizona but from the manner in which the software was used in Denver, Colorado. Some of the Arizona employees may be called to testify about the scope and terms of the agreement, but the relevant agreement was executed and intended to be performed in the State of Colorado.

A significant factor is the cost of litigation and the relative congestion of the courts' dockets. The docket of the District Court in Colorado is less congested than this Court's. Doc. 22 at 12. In 2011, the median time to dispose of a civil lawsuit in this Court was 8 months, whereas in the District of Colorado the median time was 5.7 months. *Id*. (citing Judicial Business of the United States Courts, 2011 Annual Report of the Director Honorable Thomas F. Hogan, Director, Table C-5, http://www.uscourts.gov/statistics/JudicialBusiness.aspx). This case can expect a speedier resolution in the District of Colorado, a fact that will reduce litigation costs for both parties. *Leyvas*, 2008 WL 2026276 at *5; *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984).

**IT IS ORDERED:**

1. Defendant's motion to transfer venue (Doc. 22) is **granted.**
2. The Clerk of the Court is instructed to transfer this case to the District Court for the District of Colorado.

Dated this 18th day of December, 2012.

David G. Campbell
United States District Judge